DECISION
{¶ 1} Plaintiff-appellant, Joelle Hancock, filed a complaint against Columbus Police Officer James Ashenhurst and Officer Colleen Quickert, alleging false arrest and false imprisonment. She also alleged that the use of a drawn firearm against her was unreasonable and that she was unlawfully searched. Appellees filed a motion for summary judgment. The trial court granted the motion for summary judgment finding that appellees were entitled to immunity pursuant to R.C. Chapter 2744. Appellant filed a notice of appeal and raises the following assignment of error:
The lower court erred, to the prejudice of the Plaintiff Joelle Hancock, by awarding summary judgment to the Defendants. Genuine issues of material fact exist in the record regarding the true circumstances of Ms. Hancock's detention by the police; and whether the conduct of the Defendants was such that a jury could find it to be reckless or in bad faith. Conflicting evidence exists on the central issues in the case, precluding the use of the Rule 56 summary judgment procedure. Ms. Hancock has a right to present her claim to a trier of fact.
 {¶ 2} Both parties, in arguing this case, have taken liberty with the facts and relied upon information which is not part of the record.
 {¶ 3} To prevail on a motion for summary judgment, the moving party must demonstrate that, when the evidence is construed most strongly in favor of the non-moving party, no genuine issue of material fact remains to be litigated and that it is entitled to judgment as a matter of law. Civ.R. 56(C); Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Williams v. First United Church of Christ
(1974), 37 Ohio St.2d 150, 151. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the non-moving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 4} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Supreme Court of Ohio stated that the moving party, on the ground that the non-moving party cannot prove its case, has the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the non-moving party's claim. Once the moving party satisfies this initial burden, the non-moving party has a reciprocal burden to set forth specific facts showing there is a genuine issue for trial. The issue presented by a motion for summary judgment is not the weight of the evidence, but whether there is sufficient evidence of the character and quality set forth in Civ.R. 56 to show the existence or non-existence of genuine issues of fact.
 {¶ 5} When an appellate court reviews a trial court's disposition of a summary judgment motion, the appellate court applies the same standard as applied by the trial court. Maustv. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. An appellate court's review of a summary judgment disposition is independent and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the evidence in accordance with the standard set forth in Civ.R. 56, as well as the applicable law. Murphy.
 {¶ 6} On March 30, 2002, at approximately 8:30 in the evening, appellant was returning to her home after taking her friend home. At the time, appellant was a student at Marion Franklin High School and lived with her mother, father, and older sister Camille Ware. Appellant was driving a car that was registered to her sister. Appellant stated in her deposition that, as she was traveling on Lockbourne Road, a police cruiser activated its lights and she pulled over into a pizza shop parking lot. The police officer, James Ashenhurst, pulled in behind her, exited the cruiser and told her to put her hands in the air. Another police officer, Colleen Quickert, approached her vehicle with a gun drawn and pointed at her head. She was told to get out of the vehicle and was walked to the cruiser parked directly behind her. By that time, Officer Quickert had put away her gun. Before she was placed in the cruiser, the female officer patted her down. Appellant started crying and was asked why she was crying if she had not done anything. Officer Ashenhurst asked for her driver's license. The officers repeatedly asked her who was "Markeeta Stevens"[1] and whether her sister used any aliases. She was given back her driver's license and told she could go home. When she arrived home, she told her parents and her sister what had happened. The next day, she filed a complaint at police headquarters. Appellant admitted that neither officer verbally threatened her.
 {¶ 7} Officer Ashenhurst stated that he detained appellant on March 30, 2002. While on routine patrol, he was driving behind appellant and ran a random check on the license plate, which was part of his routine.[2] In response to the license plate number that was typed into Officer Ashenhurst's computer, the LEADS system sent three pages of information, including that there was a warrant for the arrest of Markedis Stevens for possession of cocaine. According to LEADS, Markedis Stevens has the same address and a social security number similar to the registered owner of the car appellant was driving, who was her sister, Camille Ware. He was concerned because the information was that Markedis Stevens used aliases. Officer Ashenhurst did not notice that the warrant was issued for a man. Officer Ashenhurst admitted that appellant was not doing anything out of the ordinary before he pulled her over and she did not commit any traffic offenses or do anything suspicious, unusual or threatening.
 {¶ 8} The police department investigated appellant's complaint and found that Officer Ashenhurst had made an investigative stop without legal justification. Officer Ashenhurst stated the first time he was aware that the warrant was issued for a male was during the police Internal Affairs investigation. At the time of the stop, he was concerned whether appellant was using an alias and was actually the person for whom the warrant was outstanding.
 {¶ 9} Officer Quickert heard on the radio that Officer Ashenhurst had a 50A vehicle, which is a "felony vehicle," and, since she was close, she stopped to help. (Quickert Depo. at 9.) As she approached, Officer Ashenhurst had the vehicle stopped in the pizza parking lot. Officer Quickert did not remember appellant doing anything suspicious prior to the pat-down, but her practice is always to conduct a Terry frisk when stopping a car for a drug-related offense. Her understanding was that appellant was released because she was not the person for whom the warrant was outstanding.
 {¶ 10} The trial court found that the officers were entitled to immunity pursuant to R.C. Chapter 2744.[3] The employees of a political subdivision are immune from liability pursuant to R.C. 2744.03(A)(6), unless one of three exceptions applies:
(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
(c) Liability is expressly imposed upon the employee by a section of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.
 {¶ 11} Only the second exception is relevant to this case. InCook v. Cincinnati (1995), 103 Ohio App.3d 80, 90-91, the court defined the terms used in R.C. 2744.03(A)(6)(b). "`Malice' is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. * * * `Bad faith' involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." TheCook court continued and cited Fabrey v. McDonald PoliceDept. (1994), 70 Ohio St.3d 351, 356, where "wanton misconduct" was defined as the failure to exercise any care whatsoever. "`[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' * * * Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury." Id. at 356, citingRoszman v. Sammett (1971), 26 Ohio St.2d 94, 96-97. Reckless misconduct, in these circumstances, may be used interchangeably with willful misconduct. Brockman v. Bell (1992),78 Ohio App.3d 508, 516. "Willful misconduct is also something more than negligence and it involves a more positive mental state prompting the injurious act than does wanton misconduct. * * * [T]he intention relates to the misconduct, not to the result, and, therefore, an intent to injure need not be shown." Id. at 515. "The Ohio Supreme Court has defined `willful misconduct' as 'an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.'" Id. at 515, quoting Tighe v. Diamond (1948),149 Ohio St. 520, 527. In Poe v. Hamilton (1990), 56 Ohio App.3d 137, 138, the court defined "reckless" as a perverse disregard of a known risk.
 {¶ 12} Under the guidelines of Dresher, there must be some evidence to demonstrate that appellees acted maliciously, in bad faith, or wantonly or recklessly. In this case, appellant has not demonstrated that Officer Quickert had any knowledge that appellant was not the person for whom a warrant was outstanding or that the pat-down search was unreasonable. Officer Ashenhurst told Officer Quickert that the warrant was for a felony drug violation. Appellant stated in her deposition that Officer Quickert had put her gun back in its holster before appellant was walked to the cruiser. Under these circumstances, it is not unreasonable to initially have her gun out and to conduct aTerry pat-down.
 {¶ 13} Appellant demonstrated that Officer Ashenhurst failed to read the physical description of the person wanted by the warrant, but there is no evidence in the record that he acted maliciously, in bad faith or wantonly. However, Officer Ashenhurst testified that he failed to read the computer screen containing the physical description, and appellant suggests that he may have read the physical description but stopped appellant regardless with the intention of questioning her. Officer Ashenhurst knew that the driver of an automobile is not always the registered owner and if he had looked at the physical description of the person for whom the warrant was issued, he would have known appellant was not that person. In those portions of the deposition provided to the trial court, and which are part of the record before this court, he gave no explanation for his failure to read the physical description of the person for whom the warrant was issued at the time he stopped appellant or while he was checking her driver's license. Construing the evidence most strongly in appellant's favor, reasonable minds could conclude that Officer Ashenhurst acted recklessly in failing to read the physical description and in stopping appellant. The trial court did not err in granting Officer Quickert's motion for summary judgment, but did err in granting Officer Ashenhurst's motion because there is a material question of fact whether his behavior was reckless. Appellant's assignment of error is well-taken in part.
 {¶ 14} For the foregoing reasons, appellant's assignment of error is sustained in part and overruled in part. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings in accordance with this decision.
Judgment affirmed in part, reversed in part, and cause remanded.
Watson, J., concurs separately.
Sadler, J., concurs separately.
[1] The name "Markeeta Stevens" is spelled differently in the deposition and the LEADS printout, but the parties apparently agree the reference is to the same person.
[2] We note that the copies of the depositions submitted to the trial court with appellees' motion for summary judgment have pages missing but, since the missing pages were never part of the trial court record, we have not asked to have these pages provided to this court.
[3] Am.Sub.H.B. No. 350 amended R.C. Chapter 2744 but was declared unconstitutional by State ex rel. Ohio Academy of TrialLawyers v. Sheward (1999), 86 Ohio St.3d 451, thus the law regarding statutory immunity to political subdivisions and employees of political subdivisions has returned to the law that existed prior to Am.Sub.H.B. No. 350. See Stevens v. Ackman
(2001), 91 Ohio St.3d 182, 191.