DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant the State of Ohio has appealed from the decision of the Summit County Court of Common Pleas that granted Defendant-Appellee Robert C. Swan's motion to suppress. This Court reverses.
 I {¶ 2} On August 3, 2005, Defendant-Appellee Robert C. Swan was indicted for one count of illegal manufacture of drugs, in violation of R.C. 2925.04; one count of illegal assembly/possession of chemicals to manufacture drugs, in violation of R.C. 2950.041; one count of illegal use or possession of drug paraphernalia, in violation of R.C.2925.14(C)(1); and one count of theft, in violation of R.C.2913.02(A)(3). Swan waived reading of the indictment and entered "not guilty" pleas to all charges in the indictment.
 {¶ 3} On August 26, 2005, Swan filed a motion to suppress. He argued that the police executed an unwarranted and unreasonable search of his person and his residence. The State did not file a brief in opposition to Swan's motion.
 {¶ 4} On September 13, 2005, the trial court conducted a hearing on the motion to suppress and subsequently granted Swan's motion. Based on the testimony of Officer Crockett of the Akron Police Department, the trial court made the following findings of fact. Officer Crockett went to Swan's residence to execute an arrest warrant for Swan. When he arrived at the house it was dark outside and he observed that no lights were on inside the house; it was determined that Swan was not home. Officer Crockett returned the following night and he noticed the front door to the house was "cracked open an inch and one-half" and the lights were on throughout the house. Officer Crockett knocked on the door several times, but no one answered. "Officer Crockett testified that he entered the premises because he was armed with a felony warrant for [Swan] not because of any suspected emergency situation." Once in the home, he detected a strong chemical smell and while in the house he observed "in plain view" drug paraphernalia consistent with the manufacturing of methamphetamine. During the remainder of his search for Swan, Officer Crockett observed other items associated with manufacturing methamphetamine and the chemical odor grew stronger.
 {¶ 5} The trial court continued its statement of the facts, finding the following. Swan was found sleeping in one of the bedrooms and was arrested on the arrest warrant. Swan would not provide consent for the police to search his residence, but he said his father, the owner of the home, could enter the residence. Swan's father searched the home and exited with a trash bag with items consistent with manufacturing methamphetamine. Officer Crockett denied that he either encouraged or told Swan's father to search the house. Officer Crockett cited the items he observed while looking for Swan in the house, the odor he detected, and the item he observed in the trash bag in his affidavit for the search warrant of Swan's residence. The trial court also found that no working methamphetamine lab was located at the residence.
 {¶ 6} The State has appealed the trial court's ruling suppressing the evidence observed and eventually seized by Officer Crockett. The State has asserted one assignment of error.
 II Assignment of Error Number One
"THE TRIAL COURT COMMITTED ERROR WHEN THE COURT SUPPRESSED THE EVIDENCE SEIZED BY THE POLICE."
 {¶ 7} In its sole assignment of error, the State has argued that the trial court erred when it suppressed evidence observed by the Akron Police Department ("APD"). Specifically, the State has argued that the trial court erred in suppressing evidence observed by the APD when they searched for Swan in his residence. We agree.
 {¶ 8} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing, and is therefore, best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v. Hopfer
(1996), 112 Ohio App.3d 521, 548, appeal not allowed (1996),77 Ohio St.3d 1488, quoting State v. Venham (1994),96 Ohio App.3d 649, 653. Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell
(1998), 127 Ohio App.3d 414, 416.
 {¶ 9} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. See Maryland v.Buie (1990), 494 U.S. 325, 331, 110 S.Ct. 1093, 108 L.Ed.2d 276. Section 14, Article I of the Ohio Constitution has nearly identical language to the Fourth Amendment and similarly prohibits unreasonable searches and seizures. State v. Kinney
(1998), 83 Ohio St.3d 85, 87, certiorari denied (1999),526 U.S. 1007, 119 S.Ct. 1148, 143 L.Ed.2d 214.
 {¶ 10} For a search or seizure to be reasonable under theFourth Amendment, it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies. Katz v. United States (1967),389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; State v. Brown
(1992), 63 Ohio St.3d 349, 350. It is undisputed in the instant matter that Officer Crockett entered Swan's residence to execute an arrest warrant, that he did not have consent to enter, and that exigent circumstances did not exist. While the State has not challenged the factual determinations made by the trial court, this Court finds that the findings of fact of the trial court are supported by competent, credible evidence. Based upon said facts, we conduct a de novo review to determine whether the arrest warrant was sufficient to provide Officer Crockett with the authority to enter Swan's residence. We begin by reviewing relevant United States Supreme Court opinions, as well as this Court's precedent.
 {¶ 11} In Payton v. New York the United States Supreme Court was presented with a New York state statute that allowed the police to enter a private residence without a warrant, consent, or exigent circumstances. Payton v. New York (1980),445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. After a thorough review of the Fourth Amendment's history and relevant case law, the Supreme Court held that the police cannot enter a suspect's home to make an arrest without a warrant, consent, or exigent circumstances. The Payton Court held that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Id. at 603. Accordingly, pursuant to Payton
an arrest warrant is sufficient to enter a person's residence to effectuate the warrant, if the police have reason to believe said person is home.
 {¶ 12} The year after it issued Payton, the United State's Supreme Court revisited the issue of utilizing arrest warrants to enter a home. In Steagald v. United States, the Supreme Court reviewed "whether, under the Fourth Amendment, a law enforcement officer may legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant." Steagald v. United States (1981), 451 U.S. 204, 205,101 S.Ct. 1642, 68 L.Ed.2d 38. The Supreme Court began its analysis by recognizing that to search a home the police need a warrant, consent, or exigent circumstances. The Court then cited the following facts before making their decision. The evidence showed that the police had an arrest warrant for Ricky Lyons and they received a tip on where he may be located. The police proceeded to the address, found two men outside the house, one of which was the defendant, Steagald. The police frisked both men and determined that neither man was Lyons. The police proceeded to the door where a woman answered and stated she was alone in the house. The police then frisked and held the woman at the door while they searched the house for Lyons. They did not find Lyons, but they did discover several illegal items. Steagald was arrested and charged as a result of the items discovered during the search for Lyons. He argued to the Supreme Court that the police lacked authority to enter the residence at issue. The Court agreed.
 {¶ 13} The Steagald Court found that the police can only do what the warrant authorized, which was arrest Lyons, not enter and search a third party's home for a possible guest. Id. at 213. The Court quoted Payton and found that while an arrest warrant conveys to the police the authority to enter the arrestee's residence to search for him, it does not give the police the power to search every house the arrestee may be visiting. Id. at 215. The Court noted that such power could be greatly abused by the police and was not intended by the drafters of theFourth Amendment. Id. at 215 and 220. The Steagald Court concluded that to enter a third party's residence to effectuate an arrest warrant on said party's guest, the police must first obtain a search warrant for the residence. Id. at 222.
 {¶ 14} This Court applied Payton in Akron v. Lough and found that the police had the authority to enter the residence at issue. Akron v. Lough, 9th Dist. No. 21547, 2004-Ohio-596. InLough, the police stopped a vehicle for a traffic violation and discovered that the vehicle's owner had active arrest warrants. The driver of the vehicle was the owner's wife and she informed police that her husband's identity had been stolen by his brother and that the warrants were actually for her brother-in-law, not her husband. She instructed police that her husband was at home and provided the address. The police testified that when they arrived at the house, they observed that the front door was open with the screen door closed; they knocked and announced their presence and heard people moving on the second floor. According to their testimony, the police entered the residence, but did not find Lough on the first floor; the police went to the stairs, announced their presence again, and informed the occupants they were coming upstairs. They testified that they heard a male voice reply "we know." As they ascended the stairs they encountered the defendant, he became combative with them and was arrested for obstructing official business. The defendant argued that he could not have been obstructing official business because the police did not have permission to enter his home. This Court disagreed. Quoting Payton, we found that the police were authorized to enter the defendant's home because they had an arrest warrant bearing his name; they knew it was his residence; they heard people inside; and they believed he was in the house. Lough at ¶¶ 7-8. We found that the police had a legal purpose in Lough's house and therefore, he could be convicted of obstructing official business. Id.
 {¶ 15} In the instant matter, there was an active arrest warrant for Swan and the police knew where he lived. The first night the police attempted to effectuate the arrest warrant they arrived at Swan's residence and no lights were on; they determined he was not home. They returned the following night and the lights were on throughout the house. The officers also noticed the front door was slightly cracked open. They knocked on the door and received no response. The officers then entered the house and proceeded to look for Swan, whom they later found asleep in his bed.
 {¶ 16} We find that pursuant to Payton, Steagald, andLough, supra, the police had the authority to enter Swan's residence to arrest him. Swan had an active arrest warrant, the police went to his residence, and they believed he was home. When they received no response from Swan, still believing that he was home, they entered his residence to arrest him. Pursuant toPayton, the officers in this case had the "authority to enter [Swan's] dwelling." Payton, 445 U.S. at 603. It is clear that United States Supreme Court precedent allows the police, without a search warrant, consent, or exigent circumstances, to enter the residence of a person with an active arrest warrant to execute said warrant. See Payton and Steagald, supra. Moreover, if Swan had refused entry to the police they could have broken into his home to arrest him. Under Ohio law, an officer executing an arrest warrant may break down an outer or inner door or window of an arrestee's residence if the officer announces his intent to execute the warrant and he is refused admittance. R.C. 2935.12.
 {¶ 17} Based on the foregoing, we find that the trial court erred in granting Swan's motion to suppress. The State's sole assignment of error has merit.
 III {¶ 18} The State's sole assignment of error is sustained. The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.
Judgement reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Slaby, P.J. Carr, J. Concur.