OPINION
{¶ 1} Appellant, Laura Vasquez, appeals the judgment entries of the Portage County Court of Common Pleas awarding appellees, Village of Windham and Windham Police Department judgment on the pleadings and appellee Thomas Denvir, summary judgment. For the reasons herein, we affirm.
 {¶ 2} On December 15, 2002, Amanda Walker arrived at the Windham Police Department alleging she had been assaulted by a woman named Laura Greathouse. Patrolman Thomas Denvir took her statement during which Ms. Walker described her assailant as a white female, approximately 30 years old, blonde, and weighing between 100 to 125 pounds. Ms. Walker also stated her assailant lived in the "Projects." Patrolman Denvir retrieved a "Master Index" card identifying a Laura Greathouse. The Master Index is a general system of names kept by the Windham Police Department of all parties who visit the department, whether reportees or suspects. Coincidentally, appellant had previously contacted the department to report incidents of harassment by her now ex-husband, Brian Greathouse.[1] As a result, appellant had a card in the Master Index under her former, married name, Laura Greathouse.
 {¶ 3} Patrolman Denvir then submitted a request from the Law Enforcement Automated Data System (LEADS) for data on appellant. The LEADS report provided appellant's physical description, which was similar to the description offered by Ms. Walker. Further, the LEADS data indicated appellant had two known names: Laura Greathouse and Laura R. Gatten. LEADS also contained information on another woman, also matching the description, named Laura Greathouse. Patrolman Denvir failed to notice the additional Laura Greathouse.
 {¶ 4} Based upon Ms. Walker's statement and description as well as the information contained in the Master Index and the LEADS report, Patrolman Denvir prepared a complaint charging Laura Greathouse with assault. Appellant received a summons by certified mail on January 7, 2003 but did not notify authorities that she was not involved in the alleged assault. While appellant was not personally acquainted with the other Laura Greathouse she testified she was aware that another Laura Greathouse lived in the Windham area. Because she knew another individual had a name which matched her former name, appellant believed she could address the issue by appearing in court and explaining the likely mix up.
 {¶ 5} On January 23, 2003, appellant appeared in court to explain the mistaken identification. However, she was unable to make a statement to the judge and, being unfamiliar with the criminal process, simply pleaded not guilty. Bail was posted at $3,500 (or 10% thereof). However, appellant was unable to post bail and was consequently taken into custody. Appellant was detained in the Portage County Jail from January 23, 2003 until January 24, 2003 when she posted bail. Eventually, Ms. Walker confirmed that appellant was not the Laura Greathouse that allegedly assaulted her and the charges were dismissed.
 {¶ 6} On December 22, 2003, appellant filed a complaint alleging false arrest, false imprisonment, and negligence against the Village of Windham, the Windham Police Department, and Patrolman Denvir. The Village of Windham and the Windham Police Department moved for judgment on the pleadings on February 20, 2004. On July 19, 2004, the trial court granted the motion determining the movants were immune from liability pursuant to R.C. Chapter 2744., et seq. On April 15, 2005, the remaining defendant, Patrolman Denvir, moved the court for summary judgment. On April 22, 2005, appellant filed a "Motion For Leave to File Amended Complaint." On May 2, 2005, appellant filed her motion in opposition to Patrolman Denvir's motion for summary judgment. On June 22, 2005, the trial court granted appellant's motion to file an amended complaint. Appellant's amended complaint, which included allegations of "recklessness" against Patrolman Denvir, was subsequently filed on the same date. The record indicates that during a status conference, counsel for both parties agreed no further briefing was necessary in connection with the motion for summary judgment. On July 12, 2005, the trial court awarded summary judgment to the officer without extensive analysis. Appellant now appeals and asserts two assignments of error for our consideration. Her first assignment of error contends:
 {¶ 7} "The trial court erred in finding defendants Village of Windham and Windham Police Department's [sic] immune from civil liability based on the pleadings.
 {¶ 8} Because Civ.R. 12(C) motions test the legal basis for the claims asserted in a complaint, our standard of review is de novo. State exrel. Midwest Pride IV, Inc. v. Pontious (1996), 75 Ohio St.3d 565, 570. In ruling on a Civ.R. 12(C) motion, a court is permitted to consider both the complaint and the answer. Id. at 569. In so doing, the court must construe the material allegations in the complaint, with all reasonable inferences drawn therefrom, as true and in favor of the non-moving party. Whaley v. Franklin Cty. Bd. of Commrs. (2001),92 Ohio St.3d 574, 581. A court granting the motion must find that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief. Pontious, supra, at 570.
 {¶ 9} In the instant matter, the trial court granted the foregoing motion on the basis of political subdivision immunity under R.C. Chapter 2744. A three tiered analysis is required for determining a political subdivision's immunity from tort liability under the statute. GreeneCty. Agricultural Soc. v. Liming, (2000), 89 Ohio St.3d 551, 556. First, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). However, this general immunity is limited by R.C2744.02(B), which sets forth five instances in which a political subdivision is not immune. Finally, if a political subdivision is exposed to liability through the application of R.C. 2744.02(B), a court must consider whether the political subdivision could legitimately raise any of the defenses under R.C. 2744.03 thereby re-asserting immunity. See, e.g., Greene Cty. Agricultural Soc., supra, at 557.
 {¶ 10} In the instant case, it is undisputed that appellees, as a "political subdivision" and police department, meet the first step of the analysis and qualify for general immunity. Moreover, both parties appear to agree that appellant's arrest falls under the rubric of a governmental function. See, e.g., R.C. 2744.01(C)(2)(i).[2]
Accordingly, we must next determine whether any of the exceptions to immunity listed in former R.C. 2744.02(B) are applicable.[3]
 {¶ 11} In her response motion to appellees motion for judgment on the pleadings, appellant argued that former R.C. 2744.02(B)(4) applied to except the acts or omissions of the Village of Windham and Windham Police Department from the general allowance of immunity afforded them under R.C. 2744.02(A)(1). Former R.C. 2744.02(B)(4) provided:
 {¶ 12} "* * * political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, * * *."
 {¶ 13} Specifically, appellant asserted she was injured by the negligence of a Windham employee, Officer Denvir, which occurred within the Windham Police Department and the Portage County Courthouse, i.e., buildings used in connection with a governmental function.
 {¶ 14} The trial court rejected appellant's argument. Specifically, the court stated in its judgment entry that appellant's position:
 {¶ 15} "* * * stretches the exception to immunity set forth in R.C.2744.02(B)(4) beyond its logical limits. Taken to the logical extreme, this argument would mean that anytime police did anything in a courthouse, immunity would not apply. Police officers do a lot of work in courthouses, including filing complaints and testifying in court. Disallowing immunity here would nearly negate the statutory immunity given to political subdivisions for governmental functions. This cannot result here."
 {¶ 16} We disagree with the trial court's assessment. First, the trial court's analysis is premised upon an inaccurate interpretation of former R.C. 2744.02(B)(4), viz., that accepting appellant's allegations would universally abrogate statutory immunity for police officers whenever they are "working" in a courthouse. When read in its proper context, former R.C. 2744.02(B)(4) creates an exception to immunity where a party is injured by the negligence of a political subdivision's employee that occurs within or on the grounds of a building used in connection with the performance of a governmental function. The trial court's analysis presumes any and all actions of a police officer within the confines of a courthouse would expose him or her to liability. As the former statute clearly states, an officer would be exposed to liability if and only if his or her actions negligently cause injury within or on the grounds of buildings used in connection with the performance of a governmental function. To the extent appellant properly pleaded an injury occasioned by the negligence of a political subdivision's employee which occurred within or on the grounds of a building used in connection with the performance of a governmental function, her allegations are sufficient to overcome the Civ.R. 12(C) exercise with respect to this step of the analysis.
 {¶ 17} Next, the trial court stated:
 {¶ 18} "Moreover, Plaintiff is claiming an exception to immunity based on an act in a government building that is not owned or controlled by Windham. Justice Lundberg Stratton noted in her concurring and dissenting opinion in the above cited case [Hubbard v. Canton CitySchool Bd. of Edn., 97 Ohio St.3d 451, 2002-Ohio-6718] that the majority held that 'a political subdivision may be liable for any negligent act of an employee that occurs within or on the grounds of its buildings.' Clearly, the Portage County Courthouse is not a Windham building, and thus the case is distinguishable from Hubbard." (Emphasis sic.)
 {¶ 19} We believe the trial court's assessment is again based upon an inaccurate interpretation of the former statute as well as an improper analysis of the decision in Hubbard. The Supreme Court inHubbard held: 
 {¶ 20} "The exception to political-subdivision immunity in R.C.2744.02(B)(4) applies to all cases where an injury resulting from the negligence of an employee of a political subdivision occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function. * * *." Id. at syllabus.
 {¶ 21} The trial court seized upon an inconsequential pronoun within the concurring and dissenting opinion of Hubbard to support its position that a building "used in connection with the performance of a governmental function" must be owned by the political subdivision in order for former R.C. 2744.02(B)(4) to apply. Neither the statute nor the majority's analysis in Hubbard supports the trial court's assessment.
 {¶ 22} That said, appellant's complaint alleged Officer Denvir negligently failed to identify the proper wrongdoer before issuing a Summons and Complaint in connection with the allegations of a private citizen which led to her wrongful arrest and false imprisonment in wanton or reckless disregard of her rights. Accepting the material accusations as true, we believe appellant set forth facts which would fit within the exception set forth in former R.C. 2744.02(B)(4) and delineated by the Supreme Court in Hubbard. Thus, we hold, the trial court erred in awarding appellees' judgment on the pleadings in relation to R.C. 2744.02(B)(4).
 {¶ 23} An additional matter pertaining to R.C. 2744.02(B)(4) deserves attention: Appellees argue that appellant's allegations pertaining to former R.C. 2744.02(B)(4) are deficient because she fails to allege the injury suffered and the alleged negligent act occurred on the same premises. The plain language of the statute does not support this narrow reading. The statute simply requires that an injury resultant from the negligence of a political subdivision's employee and that injury occur within or on the grounds of buildings used in connection with the performance of a governmental function. Thus, we decline to hold former R.C. 2744.02(B)(4) mandates the negligence and the injury to occur in the same building.
 {¶ 24} We must next examine whether appellees could legitimately reassert immunity under R.C. 2744.03. The trial court believed appellees could properly do so, reasoning:
 {¶ 25} "* * * while R.C. 2744.02 provides exceptions to immunity, R.C.2744.03 provides 'exceptions to exceptions.' Subsection (A)(1) provides immunity to the political subdivision if the employee involved was engaged in the performance of a prosecutorial function. Subsection (A)(2) provides immunity if the conduct of the employee was authorized by law and/or was necessary or essential to the exercise of powers of the political subdivision. Certainly the filing of a criminal complaint is a prosecutorial function mdash initiating the prosecution process — and is also authorized by law."
 {¶ 26} We again disagree with the trial court's analysis. R.C.2744.03(A)(1) allows a political subdivision to reassert immunity "if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function." R.C. 2744.03(A)(2) provides immunity "if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee."
 {¶ 27} Here, Patrolman Denvir is not a judge, a prosecutor, a member of the general assembly nor a quasi-functionary of any similar offices. Patrolman Denvir is a police officer and, as such, was engaged in law enforcement activities in filing his report and Summons on Complaint.[4] Accordingly, R.C. 2744.03(A)(1) does not apply to shield appellees from liability.
 {¶ 28} Furthermore, R.C. 2744.03(A)(2) explicitly states that conduct "required" or "authorized by law" are shielded to the extent that the conduct giving rise to the claim was "other than negligent conduct." The trial court ignored this predicate and, in so doing, allowed immunity to reattach simply because Patrolman Denvir's conduct was authorized by law. This analysis is incomplete. Specifically, we believe R.C.2744.03(A)(2), when read in its entirety, protects a political subdivision from the intentional acts of its employees. Engleman v.Cincinnati Bd. of Edn. (June 22, 2001), 1st Dist. No. C-000597, 2001 Ohio App. LEXIS 2728, at 11 (noting immunity reattaches under this provision for employee's intentional torts via application of the canon of construction expressio unius est exclusio alterius, i.e., the inclusion of one thing implies the exclusion of another). That is, where a subdivision's employee acts under the authority of law, but in doing so commits an intentional tort, the provision shields the subdivision from liability for the resulting injuries to others. Id.
 {¶ 29} Here, even though false arrest and false imprisonment are intentional torts, appellant alleged appellees "acted negligently in performing their tasks when they knew or should have known that [appellant] was not the person who committed the offenses alleged * * *." To be sure, appellant was falsely arrested and falsely imprisoned as a result of Patrolman Denvir's acts or omissions; however, we do not believe appellant's allegations set forth adequate facts such that one could reasonably conclude that Patrolman Denvir's conduct was intentional. Accordingly, R.C. 2744.03(A)(2) does not apply to the instant matter.
 {¶ 30} However, as we review the Civ.R. 12(C) exercise de novo, we believe R.C. 2744.03(A)(3) does apply to shield the Village and its police department from liability. That provision provides:
 {¶ 31} "The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."
 {¶ 32} Here, Patrolman Denvir's actions were within his discretion with respect to enforcement powers by virtue of his duties as a police officer. By operation of the statute, immunity reattaches under the facts before this court. Thus, although we disagree with its substantive justifications, we believe the trial court did not err in awarding the Village and the police department judgment on the pleadings. Appellant's first assignment of error lacks merit.
 {¶ 33} Appellant's second assignment of error asserts:
 {¶ 34} "The trial court erred in finding no genuine issue of material fact remained regarding the reckless action of defendant Windham Patrolman Thomas Denvir."
 {¶ 35} Summary judgment is proper where:
 {¶ 36} "* * * (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v.Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389.
 {¶ 37} The moving party to a Civ.R. 56 motion bears the initial burden of providing the court with a basis for the motion and identifying evidence within the record which demonstrate the absence of an issue of fact on a material element of the nonmoving party's claim. Dresher v.Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-107. If the moving party satisfies its burden, the nonmoving party has the reciprocal burden of providing evidence to demonstrate an issue of material fact. If the nonmoving party fails to satisfy his or her burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate court's review a trial court's award of summary judgment de novo. Schnarrs v. Girard Bd. ofEducation, 11th Dist. No. 2005-T-0046, 2006-Ohio-3881, at ¶ 13.
 {¶ 38} Under her second assignment of error, appellant contends the trial court erred in awarding appellee, Patrolman Thomas Denvir, summary judgment because an issue of material fact remains regarding whether his acts or omissions in investigating the instant matter rise to the level of reckless misconduct.
 {¶ 39} As noted above, appellant moved the trial court for leave to amend her complaint to include allegations that appellee Denvir acted "recklessly" and in "wanton disregard" of her rights. This motion was filed subsequent to appellee Village of Windham and appellee Windham Police Department being awarded judgment on the pleadings. In his motion for summary judgment, Patrolman Denvir argued he was immune from liability pursuant to R.C. 2744.03(A)(6), the statutory provision affording employees of political subdivisions immunity absent a specified demonstration (1) that the employee's conduct was outside the scope of his or her employment, (2) that the employee's conduct occurred with malicious purpose, in bad faith, or in a wanton or reckless manner, or (3) that liability is expressly imposed by a separate section of the Revised Code. In response, appellant contended Patrolman Denvir was personally liable pursuant to R.C. 2744.03(A)(6)(b) because his conduct was wanton or reckless.
 {¶ 40} "Wanton misconduct is the failure to exercise any care whatsoever." Fabrey v. McDonald Village Police Dept., 70 Ohio St.3d 351,356, 1994-Ohio-368. "`Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' * * * Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury." Id. at 356, citing Roszman v.Sammett (1971), 26 Ohio St.2d 94, 96-97. Reckless misconduct may be understood as synonymous with "willful misconduct." Hancock v.Ashenhurst, 10th Dist. No. 03AP-1163, 2004-Ohio-3319, at ¶ 11, citing,Brockman v. Bell (1992), 78 Ohio App.3d 508, 516. "Willful misconduct is also something more than negligence and it involves a more positive mental state prompting the injurious act than does wanton misconduct. * * * [T]he intention relates to the misconduct, not to the result, and, therefore, an intent to injure need not be shown." Id. at 515. As such, willful or reckless misconduct involve "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." Tighe v. Diamond (1948), 149 Ohio St. 520, 527. In short, recklessness involves a "perverse disregard of a known risk."Hancock supra, citing, Poe v. Hamilton (1990), 56 Ohio App.3d 137, 138.
 {¶ 41} Under the guidelines of Civ.R. 56, there must be some evidence to demonstrate that Patrolman Denvir acted wantonly or recklessly. Given the state of the evidence, we cannot conclude that Patrolman Denvir exhibited the kind of "perversion of will" contemplated by the definitions of reckless or wanton misconduct. By implication, we further conclude the officer's conduct did not occur in perverse disregard for a known risk, i.e., with the appreciation of the probability of the injury which resulted.
 {¶ 42} Accordingly, we hold, there is no genuine issue of material fact regarding whether Patrolman Denvir acted wantonly or recklessly in filing the report and summons on complaint against appellant.
 {¶ 43} For the reasons set forth above, appellant's two assignments of error are overruled and of the Portage County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL, J., dissents.
[1]. Sometime subsequent to her divorce from Brian Greathouse, appellant changed her name to Laura Vasquez.
[2]. R.C. 2744.01(C)(2)(i) provides: "A governmental function includes * * * [t]he enforcement or nonperformance of any law." Patrolman Tom Denvir filed the initial "Uniform Incident Report" in his capacity as a Windham Police Officer. Such an action falls directly within the function of law enforcement.
[3]. The actions leading to the instant suit occurred on December 15, 2002. R.C. 2744.02 was amended by 2002 S 106; however, this amendment was not effective until April 9, 2003. Because we are bound to apply the law in effect at the time of the alleged negligent acts occurred, the language of former R.C. 2744.02(B)(4) is operative in the current matter. Hubbard v. Canton City School Bd. of Edn., 97 Ohio St.3d 451,454, 2002-Ohio-6718.
[4]. Although filing the complaint is a necessary link in the process of a criminal prosecution, our research reveals no case law indicating Officer Denvir's actions could be framed as "prosecutorial" for purposes of R.C. 2744.03(A)(1).