DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Scott Birney, appeals the decision of the Elyria Municipal Court, which denied his motion to suppress. This Court affirms.
 I. {¶ 2} On August 26, 2005, appellant was stopped by Trooper Scott Roark of the State Highway Patrol and cited for the following violations: R.C.4511.33[1], marked lanes; R.C. 4511.19(A)(1)(a), driving under the influence ("OMVI"); and *Page 2 
R.C. 4511.19(A)(1)(d), operating a motor vehicle while having a prohibitive blood-alcohol content.
 {¶ 3} Appellant initially pled not guilty to all charges and filed a motion to suppress. A hearing was held on appellant's motion to suppress on January 18, 2006, and the trial court denied appellant's motion in an entry dated March 2, 2006. Appellant then changed his plea from not guilty to no contest to reduced charges of reckless operation, a violation of R.C. 4511.20; and physical control-vehicle intoxication, a violation of R.C. 4511.194. The marked lanes violation was dismissed. The trial court accepted appellant's no contest plea, found him guilty, and sentenced him accordingly.
 {¶ 4} Appellant timely appealed his convictions, setting forth two assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR "THE ARRESTING OFFICER LACKED REASONABLE SUSPICION OF CRIMINAL ACTIVITY TO STOP APPELLANT'S MOTOR VEHICLE AND ARREST HIM FOR DRIVING UNDER THE INFLUENCE OF ALCOHOL."
 {¶ 5} In his first assignment of error, appellant argues that the trial court erred in overruling his motion to suppress because Trooper Roark lacked a *Page 3 
reasonable, articulable suspicion to justify stopping appellant's vehicle. This Court disagrees.
 {¶ 6} Regarding the relevant standard of review, this Court has stated:
 "An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. The trial court acts as the trier of fact during a suppression hearing, and is therefore, best equipped to evaluate the credibility of witnesses and resolve questions of fact. Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." (Emphasis and internal citations omitted.) State v. Swan, 9th Dist. No. 22939, 2006-Ohio-2692, at ¶ 8.
 {¶ 7} This Court will first turn to the issue of whether the police had reasonable grounds to stop appellant. While we defer to the lower court's findings of fact that are supported by credible evidence, we note that the ultimate question of whether the officer had reasonable suspicion to stop appellant is subject to a de novo review. State v.Jones, (Mar. 13, 2002), 9th Dist. No. 20810, citing Ornelas v. UnitedStates (1996), 517 U.S. 690.
 {¶ 8} An investigative traffic stop does not violate the Fourth Amendment where an officer has reasonable suspicion that the individual is engaged in criminal activity. Maumee v. Weisner (1999),87 Ohio St.3d 295, 299. "[I]f the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop." State v. Shook (June 15, 1994), 9th Dist. No. 93CA005716. Moreover, the United States Supreme Court has held that *Page 4 
a traffic stop is lawful, regardless of an officer's motives in stopping a vehicle, so long as a reasonable officer could stop the vehicle for a traffic violation. See Whren v. United States (1996), 517 U.S. 806,811-13.
 {¶ 9} R.C. 4511.33(A)(1) states in relevant part: "Whenever any roadway has been divided into two * * * clearly marked lanes for traffic, * * * [a] vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic[.]" "Crossing a road's right edge line is a traffic violation pursuant to R.C. 4511.33(A)."State v. Casas Vela (Feb. 7, 1996), 9th Dist. Nos. 2451-M and 2452-M. In State v. Burton, the officer observed the defendant "drive directly on the double yellow line with his left tires for two to three seconds before he went back into his lane of travel." State v. Burton, 12th Dist. No. CA2005-12-528, 2006-Ohio-4048, at ¶ 8. The appellate court found that "the officer witnessed what appeared to be a traffic violation and therefore had probable cause to stop [the defendant]." Id.
 {¶ 10} Appellant argues that Trooper Roark made the decision to pull him over based solely on the fact that his vehicle traveled once over the marked lane. However, during his testimony at the suppression hearing, Trooper Roark was able to articulate a number of facts that sufficed to create a reasonable suspicion that appellant was committing a traffic violation.
 {¶ 11} Trooper Roark testified that he received a call from dispatch that a caller had reported a red Ford F-150 weaving down the interstate. Trooper Roark *Page 5 
stated that after receiving the "DUI" call from dispatch, he and 3 other officers started looking for a red F-150. Trooper Roark testified that he located a red F-150 vehicle traveling southbound on Route 57 right around Route 20. Trooper Roark further testified that he observed the vehicle go out of its marked lanes as it was going through a curve.
 {¶ 12} As set forth above, appellant violated R.C. 4511.33. Thus, Trooper Roark could have made a traffic stop of appellant's car. Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR "THE ARRESTING OFFICER DID NOT HAVE SPECIFIC AND ARTICULABLE FACTS TO DETAIN APPELLANT BIRNEY FOLLOWING THE INITIAL STOP."
 {¶ 13} In his second assignment of error, appellant contends that once Trooper Roark initially stopped his vehicle, he lacked specific and articulable facts to detain him. This Court finds that appellant's argument lacks merit.
 {¶ 14} Appellant contends that the trial court should have suppressed the evidence based on State v. Robinette (1995), 73 Ohio St.3d 650, certiorari granted, Ohio v. Robinette (1996), 516 U.S. 1157. The Supreme Court of Ohio held at paragraph one of the syllabus:
 "When the motivation behind a police officer's continued detention of a person stopped for a traffic violation is not related to the purpose of the original, constitutional stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some separate illegal activity justifying an extension of the detention, the continued detention constitutes an illegal seizure." *Page 6 
 {¶ 15} However, if additional facts arise during the initial detention that support a reasonable, articulable suspicion of separate illegal activity, the detention may lawfully continue as long as the new suspicion exists. State v. Myers (1990), 63 Ohio App.3d 765, 771;State v. Friedel (Jan. 24, 1996), 9th Dist. No. 17207. The trial court specifically found in its ruling that:
 "The investigating officer possessed specific and articulable facts to detain the defendant, to wit: Defendant lacked coordination as evidenced by leaning on his vehicle, being `uneasy on his feet,' `bobbing,' swaying and being unsteady; having a moderate to heavy smell of alcohol on or about his person while conversing with the officer (which became stronger upon the defendant raising his voice); exhibiting slurred speech and what was described as `cotton mouth;' and exhibiting bloodshot/glassy eyes."
The trial court's finding is correct.
 {¶ 16} Trooper Roark testified that upon pulling into appellant's driveway behind his vehicle, he observed appellant exiting the vehicle. Trooper Roark stated that he approached appellant, explained what was going on, and asked him if he had had anything to drink. Trooper Roark testified that appellant told him it was none of his concern. Trooper Roark stated that when he began speaking with appellant, he was leaned up against his vehicle and that when appellant stepped away from the vehicle, he noticed that appellant was uneasy on his feet. Trooper Roark testified that he could smell alcohol when talking with appellant and that led to the question as to whether appellant had been drinking that evening. Trooper Roark stated that appellant's eyes were bloodshot and glassy and his speech appeared to be slurred. Trooper Roark testified that after initially telling *Page 7 
him that whether or not he had been drinking was none of his concern, appellant told him that he had been at the Indians game and had had a couple of drinks, but would not comment on exactly how many or how long ago that had been. Trooper Roark testified that he asked appellant to come back to his cruiser so he could perform some sobriety tests, but that appellant was uncooperative. At that point, Trooper Roark stated that Trooper Torres pulled up and they placed appellant under arrest.
 {¶ 17} Appellant further argues that the videotape of appellant's stop and arrest as recorded by the patrol car video in the police cruiser shows that he did not lack coordination, did not exhibit slurred speech, that the officers could not have determined whether appellant had glassy/bloodshot eyes and that appellant was overall extremely articulate and well balanced throughout the entire investigatory stop. However, there is no testimony in the record as to when the video camera was turned on. The fact that appellant is not leaning against the vehicle in the video does not make Trooper Roark's testimony less credible. In fact, a video cannot take the place of the testimony of officers who were present at the scene and able to observe the demeanor of a suspect first hand. For example, this Court notes that a video cannot show whether there was an odor of alcohol about appellant's person and one cannot tell from the video in this case the condition of appellant's eyes. In addition, because appellant refused to perform the sobriety tests in his driveway, the video is not helpful in determining if appellant's *Page 8 
coordination was impaired. After reviewing the record, including the video from the cruiser, this Court concludes that as Trooper Roark was conducting the investigatory stop, further specific and articulable facts arose which gave reason to suspect appellant of OMVI. Trooper Roark could then permissibly broaden his investigation beyond the original stop because he gathered separate evidence of an additional crime during the initial investigation. Appellant's second assignment of error is, therefore, overruled.
 {¶ 18} III. Appellant's assignments of error are overruled. The decision of the Elyria Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 9 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
[1] Although the citation does not identify the particular subsection under which appellee was charged, this Court finds that the facts of this case support an analysis under R.C. 4511.33(A)(1). *Page 1