DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} In this consolidated appeal, the State of Ohio appeals the judgment of the Summit County Court of Common Pleas, which granted the motions to suppress of appellees, Michael Reed and Trammell L. Ivory. This Court reverses.
 I. {¶ 2} On January 17, 2006, Michael Reed was indicted on one count of possession of cocaine and one count of driving under suspension. Trammell Ivory was indicted the same day as a co-defendant on one count of possession of cocaine. Appellees both filed motions to suppress, and the trial court held a joint *Page 2 
hearing on the motions. At the conclusion of the hearing, the trial court granted leave to appellees to supplement their motions. Each timely filed a supplemental motion to dismiss. The State did not respond to either original motion or either supplement. On May 9, 2006, the trial court issued a joint order granting appellees' motions to suppress. The State timely appeals, raising one assignment of error for review.
 II. ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN GRANTING THE MOTIONS TO SUPPRESS[.]"
 {¶ 3} The State argues that the trial court erred by granting appellees' motions to suppress, because the deputies had authority to demand identification from appellees. This Court agrees.
 "An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. The trial court acts as the trier of fact during a suppression hearing, and is therefore, best equipped to evaluate the credibility of witnesses and resolve questions of fact. Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." (Emphasis and internal citations omitted.) State v. Swan, 9th Dist. No. 22939, 2006-Ohio-2692, at ¶ 8.
 {¶ 4} In this case, appellee Reed was driving a vehicle in which appellee Ivory was a back seat passenger and another man was riding in the front seat. Summit County Sheriff deputies stopped the car at gunpoint, because they *Page 3 
believed that the back seat passenger was Garland Porter, a man whom Sergeant James Cottle had arrested earlier in the day but who escaped from that detention. By way of background, Deputy William McKinney, who had also arrested Porter within the last month, had responded that he knew Porter's last known address and would wait in the parking lot to see if Porter arrived home. Deputy McKinney informed Sergeant Cottle that at around 8:30 p.m., a vehicle arrived in the lot carrying a man in the back seat who fit Porter's description. The description was of a black male in dark clothing. The three men entered the home at Porter's last known address.
 {¶ 5} Although both deputies knew Porter to be approximately 5'8" and 150-160 pounds, Deputy McKinney testified that he could not tell the passenger's weight because he was wearing a bulky coat on that January evening. Deputy McKinney testified that he could not determine from his observations of the men, both in and out of the vehicle, whether any of them was Garland Porter. When the three men began driving away, Deputy McKinney stopped the vehicle at gunpoint. Sergeant Cottle arrived 5 to 15 seconds later.
 {¶ 6} The deputies demanded identification from the vehicle's three occupants. Appellee Reed, the driver, admitted that his license was suspended. Based on the fact that Reed was driving under suspension, the deputies took him into custody and called for a tow truck to pick up the "suspended" vehicle. Sergeant Cottle then did a tow inventory of the vehicle, at which time he found a *Page 4 
small bag of crack cocaine in the console area. Reed was charged with driving under suspension, and both Reed and Ivory were charged with possession of cocaine.
 {¶ 7} The trial court found that the initial stop of the vehicle was lawful. This Court has held:
 "An investigative traffic stop does not violate the Fourth Amendment where an officer has reasonable suspicion that the individual is engaged in criminal activity. Maumee v. Weisner (1999), 87 Ohio St.3d 295, 299. `[I]f the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, * * * the officer is justified in making an investigative stop.' State v. Shook (June 15, 1994), 9th Dist. No. 93CA005716." State v. Birney, 9th Dist. No. 06CA008955, 2007-Ohio-1623, at ¶ 8.
 {¶ 8} Here, the passenger in the back seat of the vehicle fit the general description of Garland Porter. The three men in the vehicle entered the last known home of Garland Porter. Because it was dark, the men were some distance away, and Deputy McKinney did not want to be identified in his undercover capacity, the deputy could not determine whether one of the men was in fact Garland Porter when the men remained outside the vehicle in the parking lot. Because the deputies believed that Porter was the passenger in the back seat, and because Porter had earlier escaped after being arrested on a warrant for passing a bad check, the trial court properly found that the deputies had a reasonable articulable suspicion that the vehicle occupants were engaged in criminal activity. Accordingly, the initial stop was proper. Appellees have not filed a cross-assignment of error regarding that conclusion. *Page 5 
 {¶ 9} The trial court, however, suppressed the evidence based on its conclusion that the deputies had no authority to demand identification from the vehicle's occupants after the stop, because at that point it was clear that Garland Porter was not in the vehicle. The trial court found that "McKinney's testimony is clear that the deputies could quickly ascertain that Porter was not in the car. They could see the occupants from outside the car without removing them." Because this Court finds that the trial court's findings of fact in this regard are not supported by some competent, credible evidence, we reverse.
 {¶ 10} "The scope and duration of the investigative stop must last no longer than is necessary to effectuate the purpose for which the initial stop was made." State v. Venham (1994), 96 Ohio App.3d 649, 655, citingUnited States v. Brignoni-Ponce (1975), 422 U.S. 873; State v.Chatton (1984), 11 Ohio St.3d 59, 63; State v. Bevan (1992),80 Ohio App.3d 126, 129.
 "If circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity that triggered the stop, then the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues. Under these conditions, the continued detention is lawful, even if the officer is satisfied that the suspicion which initially justified the stop has dissipated." Venham, 96 Ohio App.3d at 655, citing State v. Myers (1990), 63 Ohio App.3d 765, 771.
 {¶ 11} Furthermore, *Page 6 
 "Police have inherent authority to follow certain investigative procedures as a matter of course following a lawful traffic stop if the officer's suspicions of criminal activity have not been dispelled. Among these are a request to see a motorist's driver's license, registration, or vehicle identification number (VIN). New York v. Class (1985), 475 U.S. 106, 115. However, if the suspicions that triggered the initial stop are dispelled and there has been no violation of the law, then the officer has no authority to demand the driver's license, registration papers, or to check the VIN." Venham, 96 Ohio App.3d at 656. See, also, Hancock v. Ashenhurst, 10th Dist. No. 03AP-1163, 2004-Ohio-3319, at ¶ 19.
In addition, R.C. 4507.35(A) states, in relevant part, that "[t]he operator of a motor vehicle shall display the operator's driver's license, or furnish satisfactory proof that the operator has a driver's license, upon demand of any peace officer * * *."
 {¶ 12} In this case, Deputy McKinney testified that he stood in front of the vehicle to stop it, but that he only looked at the driver, and not the passengers, to ensure that he would not be hit by the car if the driver attempted to flee. He further testified that when Sergeant Cottle arrived within seconds, he went to the passenger side of the vehicle while Cottle went to the driver's side and immediately asked the driver for identification, at which time appellee Reed responded that his driver's license was suspended. Deputy McKinney testified that he and Sergeant Cottle then removed the three occupants from the vehicle and frisked them.
 {¶ 13} Defense counsel asked why the deputies did not let the car go "despite the fact you didn't see Mr. Porter sitting in the vehicle." Deputy McKinney reiterated that he had not seen the back seat. The trial court then asked *Page 7 
the deputy whether he looked at the three people in the car. Deputy McKinney testified that he only looked at all three after they got out of the car. When the trial court asked why he did not look at the occupants before they exited the vehicle, Deputy McKinney responded that it was dark.
 {¶ 14} Sergeant Cottle testified that they "took the occupants [of the vehicle] down at gunpoint * * * because the person in the back seat fits the description of the person that ran from me." He then testified that they made everyone exit the vehicle, patted them down, and immediately tried to identify everyone.
 {¶ 15} Garland Porter had escaped from custody earlier that day, and his recapture was a significant issue to the deputies. Furthermore, Deputy McKinney testified that, when he first dealt with Porter within the past month, Porter misrepresented his identification, claiming to be "Michael Stevens." Accordingly, determining the identification of the occupants of the vehicle in which Porter was suspected to be was an important matter in this instance.
 {¶ 16} This Court finds that there is no competent, credible evidence to support the trial court's finding that the deputies could quickly ascertain that Porter was not in the car. There is some competent, credible evidence, however, to support a finding that it was too dark to see into the back seat of the vehicle and that the immediate identification of the occupants was important. Given that the initial stop was lawful, the deputies were authorized under the circumstances to *Page 8 
follow standard investigative procedures and demand the identification of the occupants. Once they did that and learned that appellee Reed was driving with a suspended license, his continued detention and inventory of his vehicle were warranted. Accordingly, the trial court erred by granting appellees' motions to suppress. The State's sole assignment of error is sustained.
 III. {¶ 17} The State's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded to the trial court for further proceedings consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 9 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellees.
 SLABY, P. J. DICKINSON, J. CONCUR *Page 1