[Cite as *State v. Johnson*, 2011-Ohio-3941.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25525 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KENNETH E. JOHNSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 01 0177 |

DECISION AND JOURNAL ENTRY

Dated: August 10, 2011

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Kenneth Johnson, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I

{¶2} In the early hours of January 18, 2010, an unarmed man approached Dobrica Bugasch from behind while she was standing outside her car talking to a friend on her cell phone. The man demanded her keys, took her cell phone, ordered her into the car, then fled on foot. Police arrived at the scene and, based on the description provided by Bugasch, apprehended Johnson shortly. Johnson had Bugasch's cell phone with him at the time. In February 2010, Johnson was indicted on one count of robbery, in violation of R.C. 2911.02(A)(2), a second-degree felony, and an accompanying repeat violent offender specification.

**{¶3}** A jury found Johnson guilty of robbery. The trial court found him guilty of the specification and sentenced him to eight years in prison for the offense. The trial court also sentenced Johnson to one additional year of prison for violating the terms of his post-release control in a 2004 case, for an aggregate sentence of nine years. Johnson now appeals, asserting four assignments of error for our review, some of which have been rearranged for purposes of our analysis.

II

Assignment of Error Number One

"THE TRIAL COURT ERRED IN DENYING APPELLANT JOHNSON'S MOTION TO SUPPRESS THE OUT-OF-COURT IDENTIFICATION."

**{¶4}** In his first assignment of error, Johnson argues that the trial court erred in denying his motion to suppress. Johnson claims that the "show-up" identification procedure employed by the police was inherently suggestive and resulted in a substantial likelihood of misidentification, thereby violating his due process rights.

**{¶5}** The Ohio Supreme Court has held that:

"Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.

Thus, we review the trial court's factual findings for competent, credible evidence and consider the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, at ¶6, citing *Burnside* at ¶8.

{¶6}  "When a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." *State v. Waddy* (1992), 63 Ohio St.3d 424, 438, superseded by Constitutional amendment on other grounds, citing *Neil v. Biggers* (1972), 409 U.S. 188 and *Manson v. Brathwaite* (1977), 432 U.S. 98.  This Court and others have acknowledged that "show-up" identifications, where police present only one person to the victim for a relatively short time after the incident for the purposes of identification, are inherently suggestive.  *State v. French* (May 23, 1984), 9th Dist. No. 11547, at *2; *State v. Duke*, 2d Dist. No. 23110, 2009-Ohio-5527, at ¶10; *State v. Sutton*, 10th Dist. No. 06AP-708, 2007-Ohio-3792, at ¶38.  "The central question is whether under the totality of the circumstances the identification is reliable even though the confrontation procedure was suggestive."  *State v. Parker* (1990), 53 Ohio St.3d 82, 87.  In determining the reliability of the identification under the circumstances, the court considers factors such as "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."  *Manson*, 432 U.S. at 114, citing *Biggers*, 409 U.S. at 199-200.  Accord *State v. Mosley* (Apr. 15, 1987), 9th Dist. No. 12736, at *3.

{¶7}  Johnson does not take issue with any of the factual findings articulated by the trial court on the record in support of its decision to deny his motion to suppress, but instead, argues that the trial court reached the wrong legal conclusion based on those facts.  At the suppression hearing, Detective Pat McMillan testified that he responded to a call that a robbery had occurred about twenty minutes earlier in the parking lot of the Platinum Horse, a gentlemen's club in

south Akron. Once there, Detective McMillan spoke to Bugasch and other officers on the scene and received a description that the assailant was a large African-American man wearing dark clothing and a stocking cap, who was unarmed and without a mask. Additionally, he viewed a video of the robbery being committed, as one of the club's security cameras had captured the entire event on tape. Approximately ten minutes after he arrived, one of the patrol units searching the area informed on-site officers that they had located a suspect matching the assailant's description. Detective McMillan drove Bugasch to the nearby neighborhood where police officers held Johnson. Bugasch remained in Detective McMillan's car while officers removed Johnson from the police cruiser in which he was being held. Upon seeing Johnson, Bugasch told Detective McMillan, without hesitation or equivocation, "that's him." Police then called Bugasch's cell phone number, and one of the two cell phones police found on Johnson's person began to ring.

{¶8} The video recording showed Bugasch standing near her car in a lit parking lot when Johnson approached her. He initially pushed her from behind into the opened door of her vehicle, then pulled her away from the vehicle and pushed her to the ground. The video revealed that the attack lasted only twenty-five seconds, but that Bugasch was able to view Johnson, with the parking lot lights behind her, for nearly ten seconds of the encounter.

{¶9} Based upon the foregoing evidence, we conclude that under the totality of the circumstances, Bugasch's identification of Johnson was reliable, despite the use of an inherently suggestive identification technique. *Parker*, 53 Ohio St.3d at 87. Accord *State v. Jennings*, 7th Dist. No. 08-MA-181, 2009-Ohio-6536, at ¶15-23 (concluding, in the context of an ineffective assistance claim, that victim's show-up identification was reliable where victim identified defendant without hesitation thirty minutes after the robbery, despite still being under the stress

of the attack). Bugasch was able to view Johnson in a lit parking lot for nearly half of the attack. Though she was shaken by the event, Johnson was unarmed, so Bugasch was not distracted by a weapon or multiple assailants. Compare *State v. Singfield*, 9th Dist. No. 24576, 2009-Ohio-5945, at ¶19 (acknowledging that two victims' descriptions of their assailant likely differed because he robbed them at gunpoint which would draw their focus to the weapon, not necessarily the assailant). Less than an hour had passed between the time of the robbery and Bugasch's identification of Johnson, and Bugasch was certain in identifying Johnson as her attacker. Moreover, Johnson had Bugasch's phone in his pocket when police searched him after the positive identification was made.

{¶10} Because Bugasch's identification of Johnson was reliable, the trial court did not in err in denying Johnson's motion to suppress. Accordingly, his first assignment of error is overruled.

### Assignment of Error Number Three

"THE CONVICTION SHOULD BE REVERSED BECAUSE THEY ARE (sic) AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BECAUSE THE EVIDENCE SUPPORTING THEM (sic) WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE A CONVICTION BEYOND A REASONABLE DOUBT."

{¶11} In his third assignment of error, Johnson argues his conviction is based on insufficient evidence and is against the manifest weight of the evidence. Johnson again challenges the reliability of the identification process employed by police and further argues that Bugasch's description of her attacker was unspecific and omitted details about his facial features and voice. He further argues that the jury should not have credited Bugasch's testimony as to identification because she was only able to view her attacker for a matter of seconds. Though he acknowledges that he had Bugasch's cell phone with him at the time of his arrest, Johnson

6

argues that the police acknowledged at trial that people in the neighborhood in which he was found often exchange stolen phones for drugs or money, which suggests he might have done so as well. We note that the foregoing arguments all challenge the weight of the evidence, not whether there was sufficient evidence upon which to base a conviction. Thus, we limit our analysis accordingly.

{¶12} When considering a manifest weight argument, the Court:

"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issues than supports the other. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id.

{¶13} The jury found Johnson guilty of robbery under R.C. 2911.02(A)(2), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall *** [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]" Whoever commits the foregoing offense is guilty of robbery, a second-degree felony. R.C. 2911.02(B).

{¶14} At trial, Bugasch testified that she lives in Wooster, but occasionally attends a singles dance at Guy's Party Center in Akron. While at a dance in January, she ran into Jim Patsey, a friend she has seen there before, and the two decided to meet at a restaurant after the

dance ended. Bugasch had picked up a girlfriend on the way, so she planned to drop off her friend, then return to meet Patsey to eat. Upon returning to meet Patsey, Bugasch got lost. Being unfamiliar with the area, she pulled into a parking lot with "a lot of lights *** and *** a lot of cars" in order to call Patsey for directions. While on the phone, Bugasch stepped out of her car to read the sign on the building where she had parked to relay that information to Patsey. When returning to her car, a large man wearing dark clothing and a stocking cap approached her from behind, grabbed her cell phone, demanded her keys, and told her to get in the car. Bugasch resisted and started to scream. The man pushed her to the ground, at which point she stood up and ran into the building for help. The club's manager, Helen Riggenbach, testified that she immediately called police and scanned the club's security cameras to determine if the attack had been captured on tape, which it had.

{¶15} Officer William Aey testified that police were searching a nearby low-income apartment complex when they saw Johnson standing in the hallway of the apartment complex. Police apprehended another suspect, however, that they thought matched the description issued on the police radio. When officers brought Bugasch over to the neighborhood to identify the suspect, she indicated that he was not the man who had attacked her because he was too thin and had on a different colored jacket. Officer Aey returned to the Platinum Horse to view the video recording himself and radioed out an updated description of the suspect to officers searching the area. He headed back to the same neighborhood and saw Johnson again, still standing in the hallway. Having recently viewed the suspect in the video, Officer Aey realized that Johnson matched the size and look of Bugasch's attacker, so he detained Johnson while Detective McMillan drove Bugasch back to the area for purposes of identification. Once Bugasch

positively identified Johnson, police retrieved two cell phones from his coat pockets when they searched him, one of which was Bugasch's.

{¶16} Bugasch testified she and Johnson were "face to face" at times during the attack and that upon seeing Johnson approximately forty minutes later, she was "a hundred percent" certain that he was the man who attacked her and took her phone.

{¶17} The State introduced the club's security video that had captured the attack and played it for the jury several times as different witnesses testified. Detective McMillan recounted the same testimony that he offered at the suppression hearing, but further noted that when he watched the security footage at the scene, he was able to determine that the suspect's coat had a "distinct pattern" of stitching on it and that he was wearing a dark-colored stocking cap. Detective McMillan testified that when the police stopped Johnson, he was wearing the exact same coat as the attacker in the video and a navy blue stocking cap, both of which were admitted into evidence at trial.

{¶18} Despite Johnson's assertions that Bugasch was unable to provide any specific details about the features of her attacker and viewed him for only seconds, the record reveals that she was in close proximity to Johnson for nearly half of the twenty-five second attack. Furthermore, the State provided a video recording corroborating Bugasch's description of Johnson, supplemented by Officer Aey and Detective McMillan's testimony as to Johnson's size and appearance. Moreover, the jury could have rejected Johnson's attempt to suggest that he obtained Bugasch's phone as the result of a different transaction. See, e.g., *State v. Washington*, 9th Dist. No. 10CA009768, 2011-Ohio-1149, at ¶19 (affirming a theft conviction in the face of a manifest weight challenge and noting that the jury could properly discredit an alternative theory offered by the defendant as to how the theft occurred). Thus, we cannot conclude that the jury

"clearly lost its way and created [] a manifest miscarriage of justice" in convicting Johnson of robbery. *Otten*, 33 Ohio App.3d at 340. Johnson's third assignment of error is overruled.

Assignment of Error Number Two

"THE TRIAL COURT ERRED IN FAILING TO GIVE A REQUESTED JURY INSTRUCTION AS TO CROSS RACIAL IDENTIFICATION IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

{¶19} In his second assignment of error, Johnson argues that the trial court failed to properly instruct the jury on the issue of eyewitness identification pursuant to *United States v. Telfaire* (1972), 469 F.2d 552, 558-59. Specifically, Johnson sought an instruction on cross-racial identification based on the fact that he was African-American and Bugasch was Caucasian and that she had admitted at trial that she had little to no interaction with African-Americans while living in Wooster, Ohio, for the past thirty-five years, after moving there from Yugoslavia. In this regard, Johnson asked the trial court to take judicial notice of the estimated number of African-Americans in Wooster, which it did, while simultaneously denying his request for any further instruction on the issue.

{¶20} Because Johnson failed to object to the trial court's decision on the instruction, we apply a plain-error analysis to this matter. *State v. Frazier*, 9th Dist. No. 25338, 2011-Ohio-3189, at ¶38. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. To prevail on a claim of plain error, a defendant "must establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." *State v. Waddell* (1996), 75 Ohio St.3d 163, 166.

**{¶21}** In *Telfaire*, the District of Columbia Circuit Court discussed "the importance of and need for a special instruction on the key issue of identification, which emphasizes to the jury the need for finding that the circumstances of the identification are convincing beyond a reasonable doubt." *Telfaire*, 469 F.2d at 555. The *Telfaire* Court appended to its opinion model instructions on the issue of identification. We note, however, that Johnson sought to have an instruction on cross-racial identification, consistent with the suggested language in Chief Judge Bazelon's concurring opinion in *Telfaire*, not the model instruction appended to the majority opinion. See id. at 561 (C.J. Bazelon, concurring). That aside, the Ohio Supreme Court has held that:

> "A trial court is not required in all criminal cases to give a jury instruction on eyewitness identification where the identification of the defendant is the crucial issue in the case and is uncorroborated by other evidence. A trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by the requested instructions, and that the issue of determining identity beyond a reasonable doubt is adequately covered by other instructions." *State v. Guster* (1981), 66 Ohio St.2d 266, syllabus.

The record reveals that the trial court instructed the jury on the issue of identification and provided the jury with several factors to consider in weighing the testimony of "identifying witnesses," including:

> "[T]he capacity of the witness, \*\*\* the opportunity of the witness to observe; the witness' degree of attention at the time he or she observed the defendant; the accuracy of the witness' prior description or identification; whether the witness had had occasion to observe the defendant in the past; the interval of time between the event and the identification; and all the surrounding circumstances under which the witness has identified the defendant."

The jury was also instructed on the concept of reasonable doubt and was instructed to "consider the credibility" of the each witness based on:

> "[T]he reasonableness of the testimony; the opportunity he or she had to see, hear or feel the things about which he or she testified; the accuracy of the witness'

memory; *** the witness' intelligence, bias, interest in the outcome, if any; *** together with all the facts and circumstances surrounding the testimony."

Finally, we note that, pursuant to Johnson's request for judicial notice of the African-American population of the area in which Bugasch resided, the jury was further instructed that "according to the 2000 Census [D]ata, the total population of the city of Wooster, Ohio was 24,811, of which 947 individuals were reported as African-American." Based upon the foregoing instructions, we cannot conclude that the trial court committed plain error in failing to provide the jury with the cross-racial instruction Johnson requested, as it is apparent from the foregoing that "the issue of determining identity beyond a reasonable doubt [wa]s adequately covered by other instructions." *Guster*, 66 Ohio St.2d at syllabus. Accord *State v. Klein* (Jan. 13, 1988), 9th Dist. No. 2280, at *2 (concluding the trial court's jury instructions adequately addressed the issue of identification without providing a *Telfaire* instruction). See, also, *State v. Taylor*, 9th Dist. No. 09CA009570, 2010-Ohio-962, at ¶29-37 (concluding that counsel was not ineffective for failing to request a *Telfaire* instruction where the victim had identified the burglar as Hispanic, but the defendant was Caucasian).

{¶22} Johnson's second assignment of error lacks merit. Accordingly, it is overruled.

Assignment of Error Number Four

"THE TRIAL COURT ERRED IN SENTENCING APPELLANT JOHNSON TO ONE YEAR OF PRISON ON HIS POST-RELEASE CONTROL VIOLATION WHEN THE COURT HAD NO JURISDICTION TO IMPOSE SAID SENTENCE."

{¶23} In his fourth assignment of error, Johnson argues that the trial court erred in sentencing him under R.C. 2929.141 to an additional year in prison for violating the terms of his post-release control sentence stemming from a 2004 conviction. He argues that the trial court erred in imposing post-release control in his 2004 case, and because post-release control was

never properly imposed, his sentence in the 2004 case is void. He further asserts that, because his 2004 sentence is void, the trial court erred in sentencing him to one year in prison for violating the terms of the improperly imposed post-release control. As a result, he asks this Court to "find that [his] sentence in [the 2004 case] was void" and to vacate his one year jail sentence in this case.

**{¶24}** Pursuant to R.C. 2929.141, when a person commits a felony and is already "on post-release control at the time of the commission of the felony, the court may *** impose a prison term for the post-release control violation." The prison term imposed cannot exceed "the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under post-release control for the earlier felony" and "shall be served consecutively to any prison term imposed for the new felony." R.C. 2929.141(A)(1).

**{¶25}** Here, the trial court imposed a one year prison term for Johnson's post-release control violation and ordered that term be served consecutive to his underlying eight year sentence on the underlying robbery offense. Our review of the record, however, reveals that the State failed to present any evidence in relationship to the 2004 case to support its claim that Johnson was, in fact, ever placed on post-release control. See, e.g., *State v. Jordan*, 124 Ohio St.3d 397, 2010-Ohio-281, at ¶6-15 (discussing, in the context of the criminal escape statute, that in order to satisfy its burden that a person was on post-release control and under the authority of the Department of Rehabilitation and Correction at the time of the offense, the State can introduce evidence that: post-release control was properly imposed in the initial sentencing entry; defendant was aware of the post-release control terms upon release from prison; defendant signed forms detailing the post-release control conditions; or defendant's contact with his or her parole officer). Though the State briefly mentioned Johnson's 2004 conviction at his sentencing

hearing in the instant matter, it failed to introduce any evidence, documentary or otherwise, to support its claim that Johnson had been placed on, and subsequently violated, any term of post-release control. Because the record is devoid of any evidence that Johnson was placed on post-release control following his release from prison in conjunction with his 2004 case, the trial court erred in imposing a one year sentence upon him pursuant to R.C. 2929.141. Accordingly, Johnson's fourth assignment of error is sustained.

### III

{¶26} Johnson's first, second, and third assignments of error are overruled. Johnson's fourth assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

> Judgment affirmed in part,
> reversed in part,
> and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

NATHAN A. RAY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.