[Cite as *State v. Brooks*, 2012-Ohio-1619.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.    25522 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THEODORE T. BROOKS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 10 01 0007 (A) |

DECISION AND JOURNAL ENTRY

Dated: April 11, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} Lachelle Bryant called 911 to report that three men had broken into her house. Soon after, police stopped Theodore Brooks and another man a couple blocks from the house because they matched Ms. Bryant's description of the intruders. They brought Ms. Bryant to the place where they stopped Mr. Brooks and the other man, and she identified the men as two of the men who had been in her house. Police matched the soles of the men's shoes to footprints leading to and from Ms. Bryant's house and found some of her possessions near the place where they encountered the men. The Grand Jury indicted Mr. Brooks for burglary. He moved to suppress Ms. Bryant's out-of-court identification, but the trial court denied his motion. A jury found him guilty, and the court sentenced him to five years in prison. Mr. Brooks has appealed, arguing that the trial court incorrectly denied his motion to suppress. We affirm because Ms.

Bryant's out-of-court identification did not create a very substantial likelihood of irreparable misidentification.

FACTS

{¶2} On the morning of January 1, 2010, Ms. Bryant called 911 to report that three men had broken into her house. She told the dispatcher that the men had already come and gone, but gave the direction the men had headed and said that one of the men was wearing a gray hooded sweatshirt. When Officer Jude Carroll arrived at the house, Ms. Bryant gave him additional details about the men. According to the officer, she told him that, although she hid behind a couch while the men were in the room with her, she saw them as they were leaving through a back door. She said that one of the men was a tall, thin, black male in his early twenties and was wearing a gray hooded sweatshirt or jacket with black lettering. Another of the men was a medium-build, medium-height black male in his early twenties and was wearing a brown jacket. She could not remember what the third man looked like other than that he was also a black male.

{¶3} Officer Benjamin Urdiales testified that he responded to the area where Ms. Bryant said the men had headed and saw two men at the dead end of a street. As he approached the men, they started running, so he chased and apprehended them. Officer Carroll brought Ms. Bryant to Officer Urdiales's location to see if the men were two of the men who had been in her house. According to the officers, while Ms. Bryant sat in a cruiser, they had the men walk in front of the cruiser one at a time and shined a spotlight on them so she could get a good look at them. One of the men was wearing a gray hooded sweatshirt and the other was wearing a brown jacket. Ms. Bryant immediately said that each was one of the men who had been inside her

house.  She told Officer Carroll that, even though she had not seen their faces, she knew they were the same men based on their clothing and physical characteristics.

{¶4}    After Ms. Bryant identified the men, Officer Carroll compared the men's shoes to footprints in the snow leading to and from her house.  They matched.  He also searched the area and found some of Ms. Bryant's possessions 50 feet from the place where Officer Urdiales first spotted the men.

### MR. BROOKS PRESERVED HIS ARGUMENT FOR APPEAL

{¶5}    The concurring opinion has suggested that this case is just like *State v. Woodson*, 9th Dist. No. 07CA0044, 2008-Ohio-1469, and that Mr. Brooks did not preserve his argument that the trial court incorrectly denied his motion to suppress.  This case is not like *Woodson*, and Mr. Brooks did preserve his argument for appeal.

{¶6}    The defendant in *Woodson* moved to join in a motion to suppress filed by a separately-indicted defendant in a different case.  The defendant in *Woodson* was tried separately from the defendant in whose suppression motion he had attempted to join.  The key holding in *Woodson* was that "[a] defendant must file a motion to suppress in his own trial in order to challenge the legality of the evidence against him." *State v. Woodson*, 9th Dist. No. 07CA0044, 2008-Ohio-1469, ¶ 10.  The phrase "in his own trial" was not used in the literal sense given that a motion to suppress is not properly filed "in" a trial, but rather is properly filed before trial.  Thus, despite that language, the holding in *Woodson* is that a defendant may not join in a motion filed by a defendant in a different case, which is what happened in *Woodson*.

{¶7}    In this case, Mr. Brooks and Brandon Lewis were named in the same indictment.  The case number assigned to that indictment in the trial court was 2010-01-0007.  Separate dockets were kept by the clerk's office for the defendants.  The docket for Mr. Brooks was 2010-

01-0007 (A), and the docket for Mr. Lewis was 2010-01-0007 (B). Some documents, for example the indictment, were listed on both dockets. Others, for example Mr. Lewis's written motion to suppress, which was filed on March 2, 2010, were only listed on the docket for one of the defendants. On March 15, 2010, the trial court filed a journal entry, which bore the number 2010-01-0007 (A) and was entered on the docket for Mr. Brooks, in which it noted that Mr. Brooks had joined in Mr. Lewis's motion: "On March 8, 2010, the Defendant joins the Motion to Suppress filed by the Co-Defendant in this case." Rule 47 of the Ohio Rules of Criminal Procedure provides trial courts discretion to allow oral motions, which is apparently what the judge did in this case. On July 8, 2010, the trial court filed an order bearing case number 2010-01-0007 (A) (B), which was entered on both dockets, denying "Defendants' Motion to Suppress." Mr. Brooks and Mr. Lewis were tried together so, even if we simply apply the language used in *Woodson*, Mr. Brooks filed his motion to suppress in his own "trial." More accurately, he moved to suppress in his own case.

{¶8} The Ohio Supreme Court "has long recognized the fundamental tenet of judicial review in Ohio that courts should decide cases on the merits." *State ex rel. Montgomery v. R & D Chem. Co.*, 72 Ohio St. 3d 202, 204 (1995) (citing *Hawkins v. Marion Correctional Inst.*, 28 Ohio St. 3d 4 (1986)). If this Court were to stretch *Woodson* beyond recognition to avoid reaching the merits in this case, it would be violating that fundamental tenet.

MOTION TO SUPPRESS

{¶9} Mr. Brooks's assignment of error is that the trial court incorrectly denied his motion to suppress Ms. Bryant's out-of-court identification. A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8. Generally, a reviewing court "must accept the trial court's findings of fact if they

are supported by competent, credible evidence." *Id*. *But see State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003-Ohio-5372, at ¶ 8.

## OUT-OF-COURT IDENTIFICATION

{¶10} "[If] a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." *State v. Waddy*, 63 Ohio St. 3d 424, 438 (1992) (citing *Neil v. Biggers*, 409 U.S. 188 (1972)). This Court has held that "show-up" identifications, in which police present only one person to the victim for a relatively short time after the incident for the purposes of identification, are inherently suggestive. *State v. Johnson*, 9th Dist. No. 25525, 2011-Ohio-3941, at ¶ 6; *see State v. Broom*, 40 Ohio St. 3d 277, 284 (1988) (concluding that show-up of the defendant at a hospital was suggestive). "[T]he . . . focus in determining whether reversible error exists," however, "is not just on whether [a show-up] was used, but on whether it was so suggestive as to create 'a very substantial likelihood of irreparable misidentification.'" *State v. Gross*, 97 Ohio St. 3d 121, 2002-Ohio-5524, at ¶ 24 (quoting *Broom*, 40 Ohio St. 3d at 284). "The factors to consider are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." *State v. Broom*, 40 Ohio St. 3d 277, 284 (1988) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)); *Gross*, 2002-Ohio-5524, at ¶ 19, 25.

{¶11} According to Officer Carroll, Ms. Bryant told him that she was in the basement of the house when she heard a door being kicked in. She ran upstairs to the first floor and discovered that the men had gone upstairs to the second floor. When they came back down, she hid behind a couch. Although she could not see the men while they were in the room with her, she was able to see them as they left through the house's back door, which was approximately 20 feet from the couch where she was hiding. She described one of the men as "a black male, early 20s, tall, thin, wearing a gray jacket with black lettering." She described one of the other men as "a black male, early 20s, wearing a brown jacket, medium build, medium height." The State also played Mrs. Bryant's 911 call, in which she described watching the men walk away from the house.

{¶12} Officer Carroll testified that Ms. Bryant did not change her description of the intruders from the time she first described them to him to when he showed her the two men stopped by Officer Urdiales. The trial court found that the gap between when Ms. Bryant saw the men in her house and the show-up was approximately 15 to 20 minutes. Mr. Brooks has not contested that finding of fact.

{¶13} According to the officers, they showed the men to Ms. Bryant by having the men walk in front of the police cruiser in which she was sitting and shining a spotlight on them. The men were in handcuffs. Officer Carroll testified that, when they showed Ms. Bryant the man in the gray hooded sweatshirt, she "immediately said, yeah, that's him" based on "his build and height and his sweatshirt with the black lettering on it [that] matched [what she had previously described]." When they showed her the man in the brown jacket, she said "[t]hat was definitely him, too" based on his "height, weight, build, and his jacket that he was wearing."

**{¶14}** Upon review of the record, we conclude that the show-up did not create "a very substantial likelihood of irreparable misidentification." *State v. Gross*, 97 Ohio St. 3d 121, 2002-Ohio-5524, at ¶ 24 (quoting *State v. Broom*, 40 Ohio St. 3d 277, 284 (1988)). Ms. Bryant was able to see the men from a close distance as they exited her house and walked away from her yard. While Officer Carroll described Ms. Bryant as "upset, crying, [and] shaking," she was able to provide specific details about two of the men's clothing and physical characteristics soon after he arrived. Her initial descriptions to Officer Carroll were consistent with the attire worn by the two men who ran from Officer Urdiales. When Ms. Bryant saw the two men during the show-up she "immediately" and "definitely" identified the men as two of the men who had invaded her house. It was also no more than 15 to 20 minutes between when she initially saw the men and the show-up.

**{¶15}** The trial court correctly denied Mr. Brooks's motion to suppress Ms. Bryant's out-of-court identification. Mr. Brooks's assignment of error is overruled.

### CONCLUSION

**{¶16}** The police show-up did not create a very substantial likelihood that Ms. Bryant would irreparably misidentify Mr. Brooks as one of the men who broke into her home. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

CLAIR E. DICKINSON
FOR THE COURT

 

BELFANCE, J.
CONCURS.

WHITMORE, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶17} I agree that Brooks' sole assignment of error must be overruled, but would not reach its merits. Instead, I would affirm the trial court's judgment on the grounds that Brooks did not preserve his argument for appeal.

{¶18} The record reflects that Brooks never filed a motion to suppress in this case. Instead, the trial court filed an entry indicating that Brooks would be joining in the motion to suppress filed by a codefendant. The motion in which Brooks apparently joined is not a part of the record in this matter. Presumably, the motion was only ever filed in the codefendant's

separately docketed case. This Court addressed the same issue in *State v. Woodson*, 9th Dist. No. 07CA0044, 2008-Ohio-1469. In *Woodson*, we held as follows:

> Crim.R. 12(C) permits a defendant to file a motion to suppress on the basis that evidence was illegally obtained. A motion to suppress must be filed within thirty-five days after arraignment unless a trial court extends that time period in the interest of justice or grants relief from it for good cause shown. Crim.R. 12(D), (H). When two or more defendants are co-defendants in a trial, they may file their motions to suppress either jointly or separately. *See State v. Reed*, 9th Dist. Nos. 23221 & 23222, 2007-Ohio-3243 (reviewing separate motions to suppress granted after a joint hearing); *State v. Smith*, 9th Dist. No. 21069, 2007-Ohio-1306 (reviewing a joint motion to suppress denied after a joint hearing). However, no procedure exists whereby a defendant in one criminal trial can join in a motion to suppress filed by another defendant in his or her separate trial. A defendant must file a motion to suppress in his own trial in order to challenge the legality of the evidence against him.

*Woodson* at ¶ 10. Because Woodson only obtained an order allowing him to join in another party's motion to suppress and failed to file his own motion, we concluded that he failed to properly preserve the suppression issue for appeal. *Id.* at ¶ 11. Specifically, we held that "[i]f Woodson wished to challenge the evidence against him, he was obligated to comply with the procedure allowing him to do so." *Id.*

{¶19} Brooks neither filed his own motion to suppress or a copy of the motion that his codefendant filed in his own case. It is true that Crim.R. 47 does permit oral motions (although it is unclear how a one-line journal entry filed by the court, presumably after an off the record conversation, would satisfy the rule's particularity requirements), but Brooks did not make an oral motion to suppress. The court specifically allowed him to join in a *written* motion to suppress, which we do not have before us in this appeal. The fact that oral motions are allowable is irrelevant. As for the importance of deciding cases on their merits, it is difficult to imagine how the tenets of due process will be served if Brooks' codefendant appeals from the written motion at issue here, the motion reveals something of which we are presently unaware, and

Brooks receives a more favorable level of review than his codefendant (who complied with Crim.R. 12) even though both appeals stemmed from the same motion. The importance of deciding cases on their merits does not trump a complete and adequate record. A defendant who wishes to seek the suppression of evidence must advise the court and the State of the basis for the motion, stating the legal and factual bases with particularity. *See State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus (holding that written motions to suppress must "state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided."). There are several ways to accomplish this requirement. For example, Brooks could have filed his own motion to suppress, filed as a joint motion the motion to suppress of his codefendant, or read the motion to suppress at issue into the record. He did not pursue any of these options. As a result, the appellate record does not contain a motion to suppress for Brooks. Because Brooks failed to comply with Crim.R. 12, I would conclude that he did not preserve his argument for appeal. *Id.* As such, I concur in judgment only.

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.