[Cite as *State v. Lewis*, 2012-Ohio-1819.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25542 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRANDON D. LEWIS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 01 0007 (B) |

## DECISION AND JOURNAL ENTRY

Dated: April 25, 2012

DICKINSON, Judge.

### INTRODUCTION

{¶1} Lachelle Bryant called 911 to report that three men had broken into her house. Shortly thereafter, police stopped Brandon Lewis and another man a couple blocks from the house because they matched Ms. Bryant's description of the intruders. They brought Ms. Bryant to the place where they stopped Mr. Lewis and the other man, and she identified the men as two of the men who had been in her house. Police matched the soles of the men's shoes to footprints next to Ms. Bryant's house and found some of her possessions near the place where they stopped the men. The Grand Jury indicted Mr. Lewis for burglary. He moved to suppress Ms. Bryant's out-of-court identification, but the trial court denied his motion. A jury found him guilty, and the court sentenced him to five years in prison. Mr. Lewis has appealed, arguing that the trial court incorrectly denied his motion to suppress, that it incorrectly denied his motion for judgment of acquittal, and that his conviction is against the manifest weight of the evidence. We affirm

because Ms. Bryant's out-of-court identification did not create a very substantial likelihood of irreparable misidentification, there was sufficient evidence to support his conviction, and his conviction is not against the manifest weight of the evidence.

## "SHOW UP" IDENTIFICATION

**{¶2}** Mr. Lewis's third assignment of error is that the trial court incorrectly denied his motion to suppress Ms. Bryant's "show up" identification. He has argued that the suggestive circumstances of the identification demonstrate that it was unreliable.

**{¶3}** A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8. Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* *But see State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003-Ohio-5372, at ¶ 8.

**{¶4}** "[If] a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." *State v. Waddy*, 63 Ohio St. 3d 424, 438 (1992) (citing *Neil v. Biggers*, 409 U.S. 188 (1972)). This Court has held that "show-up" identifications, in which police present only one person to the victim for a relatively short time after the incident for the purposes of identification, are inherently suggestive. *State v. Johnson*, 9th Dist. No. 25525, 2011-Ohio-3941, at ¶ 6; *see State v. Broom*, 40 Ohio St. 3d 277, 284 (1988) (concluding that show-up of the defendant at a hospital was suggestive). "[T]he . . . focus in determining whether reversible error

exists," however, "is not just on whether [a show-up] was used, but on whether it was so suggestive as to create 'a very substantial likelihood of irreparable misidentification.'" *State v. Gross*, 97 Ohio St. 3d 121, 2002-Ohio-5524, at ¶ 24 (quoting *Broom*, 40 Ohio St. 3d at 284). "The factors to consider are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." *State v. Broom*, 40 Ohio St. 3d 277, 284 (1988) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)); *Gross*, 2002-Ohio-5524, at ¶ 19, 25.

{¶5} At the suppression hearing, Officer Carroll testified that, when he arrived at Ms. Bryant's house, she told him that she had been in the basement of her house when she heard a door being kicked in. She ran upstairs to the first floor and discovered that the men had gone upstairs to the second floor. When they came back down, she hid behind a couch. Although she could not see the men while they were in the room with her, she was able to see them as they left through the house's back door, which was approximately 20 feet from the couch where she was hiding. She described one of the men as "a black male, early 20s, tall, thin, wearing a gray jacket with black lettering." She described one of the other men as "a black male, early 20s, wearing a brown jacket, medium build, medium height." The State also played Mrs. Bryant's 911 call, in which she described watching the men walk away from the house.

{¶6} Officer Carroll testified at the suppression hearing that Ms. Bryant did not change her description of the intruders from the time she first described them to him to when he showed her the two men stopped by other officers. The trial court found that the gap between when Ms.

Bryant saw the men in her house and the show-up was approximately 15 to 20 minutes. Mr. Lewis has not contested that finding of fact.

{¶7} According to Officer Carroll and Officer Benjamin Urdiales, they showed the men to Ms. Bryant by having them walk in front of the police cruiser in which she was sitting and shining a spotlight on them. The men were in handcuffs. Officer Carroll testified that, when they showed Ms. Bryant the man in the gray hooded sweatshirt, she "immediately said, yeah, that's him" based on "his build and height and his sweatshirt with the black lettering on it [that] matched [what she had previously described]." When they showed her the man in the brown jacket, she said "[t]hat was definitely him, too" based on his "height, weight, build, and his jacket that he was wearing."

{¶8} Like this Court recently concluded in the case of Mr. Lewis's co-defendant, "the show-up did not create 'a very substantial likelihood of irreparable misidentification.'" *State v. Brooks*, 9th Dist. No. 25522, 2012-Ohio-1619, ¶ 14 (quoting *State v. Gross*, 97 Ohio St. 3d 121, 2002-Ohio-5524, at ¶ 24). The testimony and exhibits at the suppression hearing established that "Ms. Bryant was able to see the men from a close distance as they exited her house and walked away from her yard. While Officer Carroll described Ms. Bryant as 'upset, crying, [and] shaking,' she was able to provide specific details about two of the men's clothing and physical characteristics soon after he arrived. Her initial descriptions to Officer Carroll were consistent with the attire worn by the two men who ran from Officer Urdiales [and his partner]. When Ms. Bryant saw the two men during the show-up, she 'immediately' and 'definitely' identified the men as two of the men who had invaded her house. It was also no more than 15 to 20 minutes between when she initially saw the men and the show-up." *Id.*

{¶9} The trial court correctly denied Mr. Lewis's motion to suppress Ms. Bryant's out-of-court identification. Mr. Lewis's third assignment of error is overruled.

SUFFICIENCY

{¶10} Mr. Lewis's first assignment of error is that the trial court incorrectly denied his motion for judgment of acquittal. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction . . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Davis's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶11} The jury convicted Mr. Lewis of committing burglary under Section 2911.12(A)(1) of the Ohio Revised Code. Under that section, "[n]o person, by force, stealth, or deception, shall . . . [t]respass in an occupied structure . . . when another person other than an accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense[.]" Mr. Lewis has not argued that a burglary did not occur at Ms. Bryant's house. Rather, his argument is that he was not one of the men who did it.

{¶12} Ms. Bryant testified at trial that she was sitting on a couch in her living room watching television around 1:30 a.m. when she heard a "bam" at her back door. When she heard it again, she picked up her cellular telephone and jumped behind her couch. By the time she got there, she could hear three other people inside her house. One went upstairs, one went downstairs, and one stayed on the same floor as she was on. She could hear them going through

her possessions, including taking a video game system that had been connected to her television. Once the men left, she got out from behind the couch and looked out a window, watching the men walk away from her house and down the street. Although it was dark, she could tell that one of the men was wearing a gray hooded sweatshirt with black lettering across the back and another was wearing a brown hooded sweatshirt.

{¶13} According to Ms. Bryant, when the officers brought her to where they had stopped the two men, she knew they were the same men based on their clothing. In particular, the black lettering on the gray hooded sweatshirt was "straight across," just like it had been on the man who walked away from her house. Police then showed her a bag of items that they said they had found near the place where they stopped the men. Inside the bag was her video game system and a new pair of jeans that belonged to her boyfriend.

{¶14} Officer Urdiales testified that he responded to the area where Ms. Bryant said the men had headed and saw two men at the end of a street. As he approached the men, they started running, so he and his partner chased and apprehended them. Officer Carroll testified that, after Ms. Bryant identified the men, he compared their shoes to two sets of footprints that he found in the snow next to her house. They matched. A detective testified that he attempted to take a cast of the footprints, but the snow melted before he could finish. Police were able to photograph both sets of footprints, which they submitted as evidence along with the shoes Mr. Lewis and the other man were wearing.

{¶15} Upon review of the record, we conclude that the State presented ample evidence that Mr. Lewis was one of the men who burglarized Ms. Bryant's house. Police found him with another man shortly after the burglary in the area where Ms. Bryant said the men had headed. Mr. Lewis and the other man were wearing clothing that was consistent with what Ms. Bryant

had told police and were wearing shoes that matched the footprints going to and coming from her house. Mr. Lewis ran when police approached him, and they found some of Ms. Bryant's possessions within 50 feet of the place where they stopped him. *See State v. Hand*, 107 Ohio St. 3d 378, 2006-Ohio-18, at ¶ 167 (recognizing that flight is evidence of consciousness of guilt). We, therefore, conclude that the trial court correctly denied Mr. Lewis's motion for judgment of acquittal. Mr. Lewis's first assignment of error is overruled.

MANIFEST WEIGHT

**{¶16}** Mr. Lewis's second assignment of error is that his conviction is against the manifest weight of the evidence. If a defendant argues that his conviction is against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

**{¶17}** Mr. Lewis has argued that the reason he was in Ms. Bryant's neighborhood at 1:30 a.m. was because it was New Year's Day and his friend and co-defendant, Theodore Brooks, had been invited to a New Year's Eve party at Darrika McMullen's house, which was adjacent to the place where police found them. He has noted that Ms. McMullen testified that she hosted a New Year's Eve party that night and that she had invited Mr. Brooks to the party. Ms. McMullen, however, also testified that Mr. Brooks had not attended the party and that it had ended at 11:30 p.m. so that everyone could get home before her neighbors started shooting off their guns at midnight.

{¶18} Mr. Lewis has also argued that Ms. Bryant's testimony was not credible. He has noted that she said there were three men, but police only found footprints for two outside of her house. On the night of the burglary, she told Officer Carroll that she had been in the basement when the men entered her house, but testified at trial that she had been in the living room. She also was vague about the burglars' ages, describing them as "20s, mid 20s[.] [E]arly 20s is what I believe." He has further argued that the State did not submit the gray sweatshirt with black lettering or the brown hooded sweatshirt that he and his co-defendant were allegedly wearing that night.

{¶19} Mr. Lewis's trial was in July 2010, six months after the burglary. The fact that Ms. Bryant was inconsistent about exactly where she was when the men broke into her house is not material. Mr. Lewis has not argued that a burglary did not occur. The question for the jury was whether Ms. Bryant's identification of him as one of the men who had been in her house shortly after the burglary was reliable. In this case, police found Mr. Lewis and another man a short distance from Ms. Bryant's house a short time after the burglary, they matched the description she had given to police, their shoes were the same length and had the same tread as footprints found outside Ms. Bryant's house, they ran as police approached, and police found some of Ms. Bryant's property near them. We, therefore, conclude that the jury did not lose its way when it determined that Mr. Lewis was one of the two or three men who burglarized Ms. Bryant's house. Mr. Lewis's second assignment of error is overruled.

## CONCLUSION

{¶20} The trial court correctly denied Mr. Lewis's motion to suppress and motion for judgment of acquittal and his conviction is not against the manifest weight of the evidence. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.